IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DAVID SEAN BROUGHTON #1651484 | § | |
| v. | § | CIVIL ACTION NO. 6:16cv356 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff David Broughton, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are the Texas Department of Criminal Justice, the Texas Board of Pardons and Paroles, Texas Correctional Industries, and TDCJ Executive Director Brad Livingston.

**I. The Plaintiff's Claims**

Broughton states that he has been a prisoner in the Texas penitentiary since July of 2010. TDCJ records show that he is serving a 15-year sentence for aggravated assault on a public servant with a deadly weapon. He has been forced to work various jobs without any type of compensation and has been threatened with disciplinary action if he does not comply. The Board of Pardons and Paroles refuses to apply any of his earned good time credits toward his sentence so as to give him a possible early release which he has earned. His time credit sheets have been falsified to show he is being compensated when he is not.

Broughton maintains that once a prisoner's work time and his good time, plus his calendar time (flat time) equals the length of his sentence, the prisoner is to be released because his sentence is completed. The fact that prisoners can lose good time for disciplinary violations shows that the prisoners are being forced to work against the judgment of the convicting court. He argues that once work time is credited, it cannot be taken away, but the Texas prison officials take it anyway, without required procedural safeguards.

According to Broughton, prisoners are sentenced to a set term of confinement by the sentencing court, which sentence is then reduced by twice as many hours as they work. In addition, sentence commutations of 20 to 30 days per month may be granted for good conduct. He claims the failure to release prisoners on their minimum discharge dates amounts to double jeopardy. He cites Tex. Rev. Civ. Stat. Ann. 6166 in support of his arguments.

**II. The Report of the Magistrate Judge**

After reviewing the pleadings, the Magistrate Judge issued a Report recommending that the lawsuit be dismissed. The Magistrate Judge stated first that Article 6166 was repealed in 1989 and that Texas law has long provided that good time does not reduce the length of a sentence. The Magistrate Judge further stated that good time and work time are the same and that both good time and work time serve only to advance eligibility for release on parole or mandatory supervision, rather than reducing the term of the sentence. The fact that Brought is required to work without compensation is not a constitutional violation. Broughton is not eligible for release on mandatory supervision and thus does not have a liberty interest in his good time. The Magistrate Judge rejected Broughton's double jeopardy claim, stating that Broughton has not shown multiple punishments for the same offense and the term "minimum discharge date" refers to mandatory supervision, not discharge of the sentence. Because Broughton did not show the deprivation of any constitutionally protected liberty interests, the Magistrate Judge determined that his claims are frivolous and fail to state a claim upon which relief may be granted.

**III. Broughton's Objections**

In his objections, Broughton again states that he has been forced to work without compensation and that he has received disciplinary cases for this, although one case was overturned "because of officers' maliciousness and wrongdoing." Before the case was overturned, however, he suffered punishments of 45 days of recreation, commissary, and property restrictions and 15 days of solitary confinement.

Broughton also states that he has been issued time sheets which show flat time plus good time plus work time as "total time credited." He asserts these time sheets are "falsified deceptive government documents" and it is a crime for him to be issued such documents.

With regard to double jeopardy, Broughton clarifies that when he sees the parole board and receives a five-year set-off for the nature of the crime, he believes this to be double jeopardy because he has already been sentenced for the nature of the crime. When he receives a five-year set-off when his time sheet shows that he is already over 100 percent, something is "profoundly incorrect."

Broughton states that his total time credited is at 15 years, one month, and 30 days, which is two months past his total sentence. He contends that the fact good time does not reduce the length of a sentence amounts to "breach of contract" between himself and the Defendants. Broughton further argues that "good time" and "work time" are not the same because prisoners can receive good time without working, and he has lost 364 days of good time with no loss of work time.

Broughton's first exhibit is a copy of a disciplinary case he received for refusing or failing to turn out for work. His second is a copy of a disciplinary case he received for threatening to inflict harm on an officer. This case was overturned at the Step One level.

Next, Broughton attaches a copy of a time sheet dated July 26, 2010, showing his sentence began on May 4, 2009, and he was received in TDCJ on July 20, 2010. This time sheet reflects that Broughton had served one year, two months, and 22 days of calendar time and had earned nine months and 24 days of good time and seven months and 10 days of work time. This gave him one year, two months, and 22 days of mandatory supervision time credits and two years, seven months,

and 26 days of parole time credits. A notation on the bottom states that Broughton is not eligible for mandatory supervision release.

Another time slip, dated January 4, 2011, shows Broughton had accumulated one year, eight months, and one day of flat time, one year and five days of good time, and nine months and 15 days of work time, for a total time credited of three years, five months, and 21 days. This time sheet was before Broughton's disciplinary case was overturned.

Broughton next attaches two more time slips, writing a note on the bottom of the second one. This second time sheet is dated November 21, 2012, and shows Broughton has three years, six months, and 19 days of flat time, two years, six months, and 10 days of good time, and one year, nine months, and eight days of work time, for a total time credited of seven years, 10 months, and seven days. Broughton's note states that the document is "deceptively falsified" because if his total time credited had been given to him, he would have seen the Parole Board when his total time credits amounted to seven years and six months; instead, he saw the Board when his flat time amounted to seven years and six months.

Broughton's final two time sheets are dated May 19, 2016, and January 11, 2017. The most recent of these shows that he has seven years, eight months, and nine days of flat time, four years, one month, and 20 days of good time, and three years, four months, and one day of work time, which gave him seven years, eight months, and nine days of mandatory supervision time credits and 15 years, one month, and 30 days of parole time credits. The sheet shows that he had lost 364 days of good time, indicates that he is eligible for parole, and states that parole eligibility is to be calculated on calendar time.

On September 9, 2016, Broughton received a notice of denial of parole. There were five reasons given: (1) the record indicates that the offender has repeatedly committed criminal episodes indicating a predisposition to commit criminal acts upon release; (2) the record indicates the instant offense has elements of brutality, violence, assaultive behavior, or conscious selection of the victim's vulnerability, indicating a conscious disregard for the lives, safety, or property of others

such that the offender poses a continuing threat to public safety, (3) the offender has an unsatisfactory institutional adjustment, (4) the record indicates unsuccessful periods of supervision on previous probation, parole, or mandatory supervision, and (5) the record indicates that the length of time served is not congruent with offense severity and criminal history.

Broughton follows this notice with a "good time loss limits chart," showing the amount of good time which can be lost for various disciplinary offenses, including refusal to work. His final exhibit is a request to Warden Baker stating "I would like to request for a G-2 S-2 minimum in. Not custody change, only line class." The response states "The SAT2 status and G-1 custody go together. S-2 and S-3 draw the same good time."[1]

**IV. Discussion**

As the Magistrate Judge correctly determined, the fact that Broughton is required to work without compensation is not a constitutional violation, regardless of whether or not he was specifically sentenced to hard labor. *Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir. 2001). Although he complains of punishments he received prior to his disciplinary case being overturned, including 45 days of recreation, commissary, and property restrictions as well as 15 days of solitary confinements, these punishments are not atypical or significant hardships in relation to the ordinary incidents of prison life and do not implicate any constitutionally protected liberty interests. *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000); *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Broughton fails to show how his time sheets are falsified or deceptive. These time sheets reflect the amount of calendar time, good time, and work time which he has earned, regardless of whether or not his conviction and sentence allow him to use it. The time sheet dated February 8,

[1]SAT-2, or State Approved Trusty 2, is a good time earning classification (known as a "line class.") G-1 and G-2 are custody classifications, with both being considered minimum custody (G-3 and G-4 are medium custody and G-5 is close custody). Broughton appears to be asking to be placed in G-2 custody status and State Approved Trusty 2 line class, and the response states that prisoners classified as State Approved Trusty 2 have a custody class in G-1.

2011 states that Broughton is not eligible for mandatory supervision and that his parole eligibility is to be calculated on calendar time. This comports with the law in effect at the time of Broughton's conviction, which provided that he is not eligible for release on mandatory supervision and his parole eligibility is calculated without regard to good time. Broughton's contention that he should be released when his time credits total 100 percent of his sentence lacks merit because good time does not reduce the length of a sentence, he is not eligible for release on mandatory supervision, and his parole eligibility is calculated solely on calendar time. *Ex Parte Hallmark*, 883 S.W.2d 672, 674 (Tex.Crim.App. 1994). He fails to show how this provision of Texas law amounts to a "breach of contract." The statute upon which Broughton relied, Tex. Rev. Civ. Stat. Ann. art. 6166, was repealed in 1989, and Texas law has provided since 1977 that good time applies only to eligibility for parole or mandatory supervision. *Hallmark*, 883 S.W.2d at 674; *Palmer v. Texas Board of Paroles*, 89 F.App'x 857, 2003 U.S. App. LEXIS 24969, 2003 WL 22945694 (5th Cir., December 10, 2003).

The Magistrate Judge correctly determined that work time is simply good time which is given for working. Both work time and good time serve only to advance eligibility for parole or mandatory supervision and do not affect the length of the sentence itself. Tex. Gov. Code Ann. art. 498.003(d). The fact that Broughton lost 364 days of good time due to disciplinary action, but no work time, does not mean that work time is anything other than good time which is awarded for working. This objection is without merit.

Broughton's exhibits show that he was denied parole for several reasons, one of which reads "the record indicates the instant offense has elements of brutality, violence, assaultive behavior, or conscious selection of victim's vulnerability indicating a conscious disregard for the lives, safety, or property of others, such that the offender poses a continuing threat to public safety." The denial of parole for the reasons given does not show a double jeopardy violation. The Fifth Circuit has rejected a claim that a parole board's consideration of the nature and circumstances of the offense amounts to a second trial for the same offense in violation of the Double Jeopardy Clause. *Jackson*

*v. Reese*, 608 F.2d 159, 160 (5th Cir. 1979); *see Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense).

Parole is a conditional release of an inmate to serve the remainder of his sentence under the supervision of the Board of Pardons and Paroles. Tex. Gov. Code art. 508.001(6). It is not an additional or increased sentence, and the denial of parole is not "punishment" within the meaning of the Double Jeopardy Clause. *See Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995) (no liberty interest in parole in the State of Texas).

Texas Administrative Code §145.2 explicitly states that parole guidelines consist of a "risk assessment instrument" and an "offense severity scale," meaning that in determining whether to release prisoners on parole, the Texas Board of Pardons and Paroles necessarily considers the nature of the offense. The Supreme Court has indicated that if a state chooses to establish a parole system, the state has the discretion to define the factors which should be considered by the parole authority, including the nature and circumstances of the offense. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 15-16, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Broughton has failed to show a double jeopardy violation. His objections are without merit.

**IV. Conclusion**

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 17) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled civil action is **DISMISSED WITH PREJUDICE** for purposes of proceeding *in forma pauperis* as frivolous and for failure to state a claim upon which relief may be granted. It is further

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED**.

**So Ordered and Signed**

**Feb 15, 2017**

Ron Clark, United States District Judge